**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

Dylan Loveland,

Plaintiff,

vs.

Case No. 1:25-cv-273
Hon. Paul L. Maloney

Atrium Timbers, LLC, a limited liability company, d/b/a The Timbers of Cass County,

Defendant.

---

WILLIAM F. PIPER, PLC
William F. Piper (P38636)
9848 Portage Rd
Portage, MI 49002
P: 269-321-5008
F: 269-321-5009
wpiper@wpiperlaw.com

---

## COMPLAINT

The plaintiff, Dyland Loveland, by and through his attorney William F. Piper, PLC, for his Complaint, states as follows:

## JURISDICTIONAL ALLEGATIONS

1. The plaintiff Dylan Loveland is an individual who resides in Village of Decatur, County of Van Buren, State of Michigan, and he lived there at all times relevant to this complaint

2. The defendant Atrium Timbers, LLC. is a corporation that did business in the County of Cass, State of Michigan, as The Timbers of Cass County, at all times relevant to this complaint.

3. This lawsuit arises in part under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, and 42 U.S.C. §1981 (a).

4. Jurisdiction arises under 28 U.S.C §1331.

5. The Equal Employment Opportunity Commission issued a Right to Sue letter to the plaintiff on December 16, 2025.

**COMMON ALLEGATIONS**

6. The plaintiff restates and realleges as though fully set forth herein paragraphs 1–5 of this complaint.

7. The defendant hired Mr. Loveland to work for it in December 2023 as a housekeeper

8. In July 2024 the defendant hired Mr. Loveland to work for it as a Certified Nurse Aide (CNA).

9. At all times the  that he worked for the defendant Mr. Loveland did a good job for it.

10. On March 3, 2025 Mr. Loveland complained to the defendant about inadequate staffing caused by aides leaving early, resulting in their assigned duties being given to the remaining aides, which created unsafe workloads and compromised resident care.

11. On March 7, 2025, when the inadequate staffing issue occurred again, Mr. Loveland complained again about the safety concerns referenced above to the defendant.

12. On March 13, 2025, in retaliation against him because of his complaints about the health and safety concerns set forth above, the defendant reprimanded Mr. Loveland in front of residents and co-workers for not wearing a mask, even though  Mr. Loveland had been off  work for three days and did not know that the defendant had reinstated a mask mandate.

13. On March 19, 2025, despite Mr. Loveland's stellar work record, the defendant gave Mr. Loveland a documented verbal warning for allegedly being too confrontational with staff-members and not wearing a mask, which it characterized as insubordination.

14. The defendant's disciplinary action against Mr. Loveland was false and a pretext, because it was actually retaliation against him for complaining about the health and safety concerns set forth above.

15. On March 25, 2024 Mr. Loveland complained to the on-site human resource representative of the defendant that he was being harassed and retaliated against because of his complaints about health and safety

16. On April 4, 2025 an African American co-worker about whom Mr. Loveland had complained had been leaving early called Mr. Loveland a "bitch" and a "nigger" several times and told him that she did not like him.

17. The African American co-worker also threatened Mr. Loveland after he objected to her comments, telling him "It doesn't matter baby, because my baby is going to be seeing you." referring to her son.

18. Despite that the sexual and racial slurs were inverted, given that those slurs are normally used to insult women who are African-American, Mr. Loveland recognized them to be slurs directed towards him to belittle and denigrate him because his is a white male.

19. On April 4, 2025 Mr. Loveland reported the sexual and racial slurs and threat of bodily harm referenced above to a supervisory charge nurse.

20. On April 7, 2025 one of the witnesses to the slurs and the threat set forth above reported the slurs and the threat against Mr. Loveland referenced above to three human resources department of the defendant.

21. Three days after the co-worker reported the racial slurs and physical threat, the defendant, in retaliation against her because of the report, terminated her employment by it.

22. On April 10, 2025 the plaintiff complained about the lack of disciplinary action against the African-American co-worker who had used the slurs and a threat against him as the employee continued to work for the defendant, and Mr. Loveland felt unsafe, because he had to work with her.

23. The defendant then put Mr. Loveland on an unpaid suspension for an abuse allegation involving a patient Mr. Loveland had not interacted with, but rather another employee named Dylan.

24. The defendant returned Mr. Loveland to work because the allegation of abuse was not substantiated.

25. The defendant, in retaliation against Mr. Loveland for his complaints about health and safety violations and racial harassment and threats set forth above gave Mr. Loveland a disciplinary write-up for alleged but not actual unprofessionalism.

26. The defendant also told Mr. Loveland that he would not be paid for the monies he had lost during the unpaid suspension.

27. The defendant never told Mr. Loveland that the disciplinary action on May 23, 2025 was an actual written warning.

28. The defendant then terminated Mr. Loveland March 22, 2025, citing excessive tardies.

29. The reason given for the termination was a pretext for retaliation, because Mr. Loveland had never been tardy.

30. After pointing this out to the administrator who fired him, the administration had no response.

31. The administrator then signed write-ups against Mr. Loveland that were prepared after the defendant had terminated Mr. Loveland's employment that had dates on them that were from before when the administrator had even began working at the Timbers of Cass County.

32. The reason given for terminating Mr. Loveland was false, and it was a pretext for retaliation set forth above.

33. As a result of the unlawful retaliatory termination set forth above, Mr. Loveland suffered and will continue to suffer a loss of income and benefits, emotional distress, a loss of enjoyment of life and other damages.

**COUNT I – PUBLIC POLICY VIOLATION**

34. The plaintiff restates and realleges as though fully set forth herein paragraphs 1- 33 of this complaint.

35. The defendant, as described above, disciplined and then terminated Mr. Loveland's employment by it for reasons that were false and a pretext for retaliation against Mr. Loveland because he had complained about health and safety violations.

36. This termination violated the public policy of the State of Michigan.

37. As a result of this retaliatory termination Mr. Loveland has suffered and will continue to suffer the damages set forth above.

**WHEREFORE**, the plaintiff requests a judgment against the defendant for whatever amount is sufficient to compensate him for his past and future damages, plus all recoverable interest, costs, attorney's fees, and any other relief this court deems fair and just.

## COUNT II - RETALIATION FOR COMPLAINING ABOUT RACIAL DISCRIMINATION AND HARASSMENT

38. The plaintiff restates and realleges as though fully set forth herein paragraphs 1-37 of this complaint.

39. The defendant disciplined and terminated Mr. Loveland's employment by it because he had complained about racial harassment and discrimination by a co-worker.

40. The reasons given for disciplining Mr. Loveland and terminating his employment were a pretext for retaliation.

41. This claim arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, and 42 U.S.C. §1981 (a), and the Elliott-Larsen Civil Rights Act, specifically, under 37.2701.

42. As a result of the retaliatory termination Mr. Loveland has suffered and will continue to suffer the damages set forth above.

**WHEREFORE**, the plaintiff requests a judgment against the defendant for whatever amount is sufficient to compensate him for past and future damages, punitive damages, and all recoverable interest, costs, attorney's fees, under 42 U.S.C. §1981 and State Law, and any other relief this court deems fair and just.

Dated: March 16, 2026

WILLIAM F. PIPER, PLC

By: *<u>/s/ William F. Piper</u>*
William F. Piper (P38636)
Attorney for Plaintiff